Please rise. This court is now in session. Please be seated. The clerk, call the last case, please. 314-0627. People of the State of Illinois. Kathleen, by Mark Ossoff, v. Mark Pepitone, appellant by Kathryn Stroll. Ms. Stroll, good afternoon. Good afternoon. Please report. I am Kathryn Stroll, and I represent the defendant appellant in this matter, Mr. Mark Pepitone. I am also with the Office of the State Defender. Mr. Pepitone is branded a child sex offender because of an offense he committed in 1999, and for which he received a six-year prison sentence. In 2013, 14 years later, Mark was arrested for being present in a public park while walking his dog in violation of 720-ILCS 5-11-9.4-1B because of his status as a child sex offender. Section 11-9.4-1B, or the statute, makes it unlawful for a child sex offender to knowingly be present in any public park building or on the real property comprising any public park, regardless of whether a human is present. Mr. Pepitone was sentenced to two years probation and 100 hours community service. We raised two issues in this appeal. Both challenged the constitutionality of the statute, and the first is whether it violates substantive due process. The second is whether it violates the ex post facto clause as applied to Mr. Pepitone. I am going to take the issues in that order. Issue one, as far as substantive due process goes, the question this court must answer is whether the all-out ban on all child sex offenders from ever stepping foot in any public park is rationally related to legitimate government interest, or instead whether the ban is arbitrary and or irrational. Mr. Pepitone has conceded that protecting the public is a legitimate government interest, but nonetheless argues the ban is both irrational and arbitrary. Now, the glaring reason the statute is arbitrary and irrational is because the legislators failed to show any sort of connection between parks and sex offenses. Senator Althoff, who introduced the bill that became the statute, provided zero explanation as to why child sex offenders are permanently banished from all public parks. Instead, she merely opined that by their nature, parks have obscured views and other distractions, which could potentially give a sex offender an opportunity to access potential victims. But for a statute to be constitutional, more is required than one woman's opinion that because parks have trees and perhaps other structures, sex offenses could occur. The fact is, sex offenses could occur anywhere, and there are plenty of public places that offer obscured views, such as parking lots, public libraries, subways, rest areas, the list goes on. And the legislature may get to all of them. And that's the fear that this might give us. Sort of finding a statute to be reasonable would give the legislator a carte blanche license to ban sex offenders from basically everywhere, any public place. For the purpose of this statute, however, the legislators failed to provide any data suggesting that eliminating sex offenders from all parkland throughout the entire state will reduce sex offenses. But when we look at actual data, a very different picture emerges. And taking a Department of Justice report for its sort of empirical data, statistically speaking, it's highly unlikely that a sex offense is going to occur in a park. According to the study, which was cited in both briefs, 60% of sexual assaults were reported to have occurred inside a home of a victim or of a victim's friend, 10% in the street, and 7% in a parking lot. The remaining 26% or so occurred, quote, all other locations, end quote. So while it's possible that public parks falls under this umbrella of all other locations, we're left with no indication that parks, in fact, do. And if they do, we equally don't know what percentage they would amount to. It could be 0%. What we do know, or what we can sort of gather from the study, is that because it specifically delineates that 7% of sexual assaults occur in parking lots, the number of sexual assaults that occur in parks must be less than 7%, or it would have been specifically delineated. So essentially, the study highlights the lack of logic behind the statute, such that the statute blindly imposes a disability on all child sex offenders, even though the vast majority will not reoffend, and without demonstrating any sort of logical nexus between protecting the public and banning child sex offenders from parks. Now, if the statute had some sort of limiting provision contained within it, perhaps we could consider it to be a little more reasonable. For instance, if it restricted sex offenders from entering parks with playgrounds or during certain hours when children are most likely to be present, or only if children were present, or if it prohibited certain conduct, like approaching, contacting, or communicating with a child under 18. If it provided an ability for a child sex offender to get a permit to enter the park for a particular purpose, a rally, a parade, a picnic, a family outing. If it conducted an individualized risk assessment, if it included any sort of number of limiting caveats, it might start to bear more of a reasonable relationship to its purpose. Instead, as mentioned, we've just had a blanket banishment of all sex offenders, but really no reason as to why. And since this is a case of first impression, I'd point out that people v. Dieselhorst, a Fifth District case, considered the constitutionality of a similar statute. That statute was since repealed seven months after our statute came onto the books, but then somehow reemerged into Section 11-9.3. That statute prohibited a child sex offender's presence in a park. Well, excuse me, it did not prohibit a child sex offender's presence in a park. A child sex offender could be in a park at any time, even if children were present, but a child sex offender was prohibited from certain conduct, approaching, contacting, or communicating with a child under 18. When the court upheld that statute as constitutional, it specifically said that the statute was not overbroad, and I'm going to quote, because Section 11-9.4a does not prohibit a known child sex offender from being present in a public park and enjoying its amenities. Exactly what our statute does do. Again, the difference between the two statutes is our statute isn't just prohibiting access to a person, but also a place. And by denying child sex offenders access to parkland, they're de facto prohibited from participating in a huge array of activities. Some have been mentioned, but I mean, for example, a sex offender cannot attend concerts, picnics, rallies, walk their dogs, you root for a sports league, practicing or playing in a public park, bird watch, photograph, hunt, swim at a public beach. The list is extensive. So I'd also point out, as I mentioned, 11.9-4 is still a statute, it's still in the books, child sex offenders still face restrictions as far as approaching, contacting, or communicating children in public parks. But they can use a park and enjoy its amenities, which is a lot more reasonable. So in sum, the park statute fails to meet its burden of not being a totally arbitrary exercise of state police power. It lacks any limiting provision and is both arbitrary and irrational. And for those reasons, Mr. Capitone, I respectfully request this court to find 720-ILCS 5-11-9.4-1B unconstitutional on its face. As far as issue two is concerned, Mr. Capitone also argues that the statute violates the ex post facto clause as applied to defendant. An ostensibly civil statute violates the ex post facto clause if it's retroactive and despite its civil intent, is punitive in effect. Here, the statute is undeniably retroactive since it took effect in 2011, 12 years after Mr. Capitone committed the offense that caused him to be branded a child sex offender. And since he's conceded that it has a non-punitive purpose, it's ostensibly civil according to the legislator, this court must answer whether the effect of the statute, of the law, is punitive. Both defendant and the state employ a five-factor test used by courts to determine whether an ostensibly civil statute has a punitive effect. Remarkably, the state contends that not one factor weighs in favor of finding the statute punitive. But that analysis is out of step with cases that have considered similar laws, if not the same exact type of law, and have found at least one, if not the majority of the factors, weigh in favor of finding those statutes punitive. Factor two, for example, it should go without saying that the factor of whether the law imposes an affirmative disability or restraint weighs in favor of finding the statute punitive. Child sex offenders are severely restricted in the locations where their presence is permissible. Public parks encompass far more than just grassy areas or places with playgrounds. They include trails, forests, preserves, Starbrook, the I&M Canal, Washington Square Park, all throughout the state, and any public park land under the jurisdiction of either Illinois or any local unit of government. Basically, all public space. So, again, not only are child sex offenders, but particularly Mr. Pepitone, restricted from where they can go, it's what they can do. And if we take Chicago by way of an example, Mr. Pepitone, or any child sex offender, can never join a sports league, attend a concert in Millennium Park at the Pittsburgh Pavilion, go to a Bears game at Soldier Field, which is on land rented from the Chicago Park District. He can't go to Lollapalooza or Ravinia, attend movies in the park, dine at any number of the restaurants contained within public park land. He can't go to the planetarium, the aquarium, the Museum of Science and Industry, or any other of the 11 museums on Chicago park land. Nor can he ever do a myriad of other innocent activities, such as jog, fish, camp, bird watch. The list is extensive, but he's essentially prohibited from doing any number of innocent activities within just in Chicago, the 580 parks included in the Chicago Park District, which encompasses 31 beaches, 2 botanic conservatories, 1 zoo, again 11 museums. So it's not just his presence in these parks, but it's also all of the activities that he's prevented from participating in by virtue of the... So you would say he's de facto in prison? De facto in prison? De facto in prison. Well, it's certainly akin to banishment, I would say. Banishment? Yes. Well, we're just focusing on this statute, but the huge array of statutes and restrictions that sex offenders have to apply with, I would say, make them essential outcast moral lepers, persona non grata, and they deserve the same rights that the rest of us do as far as the Constitution is concerned. So in effect, there's no end to their paying debt to society, so to speak. Correct. Now, while the state characterizes the restraint on Mr. Puppetone's movement as freedom of movement and freedom of his exercise of free will as de minimis, a defendant contends that the avalanche of repercussions that flow from the permanent banishment  is just the opposite. I'd also like to look at Factor 5, which is it asks whether the law is excessive with respect to its non-punitive purpose. Counselors, two minutes. All we really need to do when assessing this factor is consider the substantive due process argument already made. That argument highlighted the lack of connections between parks and sex offenses and further demonstrated that the all-out, lifelong, never-ending permanent banishment that failed to take into account a specific sex offender's likelihood of reoffending or to provide any limiting or triggering provision or exception whatsoever is arbitrary and irrational in its over-inclusiveness and over-breath and thus excessive. So as far as the other factors are concerned, a good case can be made that all weigh in favor of finding the statute punitive in effect. So unless your owners have any questions, defendant would respectfully request that this Court find Section 5-11-9.4-1 be unconstitutional as applied to defendant. Thank you. Mr. Russell, good afternoon. May it please the Court? Counsel. Defendant, in your first issue, it asserts that Section 11-9.4-1b is unconstitutional as it violates substantive due process by prohibiting sex offenders from entering public parks. And in the law, as counsel mentioned, public parks are specifically defined as parks, forest preserves, bikeways, trails, and conservation areas that are under the jurisdiction of the State or a unit of local government. Defendant is not banned from any other areas in the State under this law.  does not affect the fundamental right in this Court to apply rational basis review. The people noted in our brief that the First District in Avila-Briones and the Fifth District in Pollard reviewed due process challenges to the body of sex offender statutes, including the statute at issue here, and both Courts found that this statute is constitutional. The Avila-Briones Court detailed the sex offender statutes challenging that case and what they labeled as the statutory scheme and in paragraph 22 of the opinion, the Court specifically listed section 11-9.4-1b as one of the challenged statutes. In Pollard, the Court observed that the defendant challenged sex offender statutes under what was referred to as the SORA statutory scheme and in paragraph 19, Pollard specifically listed section 11-9.4-1b as one of the challenged statutes. The Avila-Briones and Pollard Courts held that the statutory scheme does not infringe on defendants' fundamental rights under the substantive due process clause and is rationally related to the goal of protecting the public. The defendants argues in a reply brief that this holding does not address the specific claim that banning child sex offenders from public parks, including when no person is present, is not a rational means of preventing sex crimes. Section 11-9.4-1b is clearly a reasonable means of protecting the public because it is not possible to determine whether a large park or a bikeway, a trail, a forest preserve, a conservation area is empty of people and available for use by a convicted child sex offender or that it will remain empty of other members of the public after the sex offender enters into the public park area. In Avila-Briones, they discussed the Seventh Circuit case of Dovey City at Lafayette and Seventh Circuit made a comment that is directly applicable to the statute issued here. The court said the city cannot reasonably anticipate what parts of the park system children will be located in at all times and on this record we have no basis on which to question this judgment that children are vulnerable throughout the park system. The appellate court quoting our Supreme Court reiterated that the rational basis test does not require that this statute be the best means of accomplishing the legislature's objective. Does the statute at issue survive rational basis review? What is the legislature's objective in all of this array of opposing counsel referred to as banishment legislation, which I think is probably a good term. Well, banishment is a total ban. We mentioned a particular case in our brief, J.W. That was a young juvenile offender, 12-year-old and he was banished completely from his hometown where his crimes were committed and they said that's banishment. But that's not what's happening here. He is prevented from going to any child sex offenders prevented to go from specific locations that are operated by governmental bodies. But there are thousands of places throughout the state of Illinois that are not under the Well, the whole grouping of things there are the other statutes, you've got school houses, churches, all kinds of things, right? And so many feet from those areas? That's correct. And those have been held to be constitutional. Yes, exactly. So even under bridges now, some ordinances? I'm not aware of those particular ordinances in this context, but I've heard of some of those type of ordinances. So the rational basis is that we can do this wherever there might be likely children to congregate No, no. Because, for instance, it does not prohibit sex offenders from going to a movie theater from an arena that's not in a public park. You can go to the Illinois River here as long as you don't go to the park section you can fish anywhere in the river. You're supposed to jump over the shoreline to get into the water? I have, ma'am. But, you know, it doesn't have... I understand your point. My question is, not yet. What do you mean, not yet? There hasn't been that... Well, we're dealing with a statute as it exists, an anticipatory ruling. I don't know that it would be appropriate, but I understand your concern. But it would be the same analysis, wouldn't it? In a later statute? No, I don't believe it would. Where does it end? It ends when you get to the point where there are too many places included that are not governmentally regulated areas, for instance. In this point, counsel mentioned Chicago specifically, and yes, there are quite a few public amusement areas, entertainment areas, etc., sporting events that are in Grant Park and other parks that are right there on the shoreline. Well, take your river example. There's a riverwalk in Ottawa. Yes. That's considered sort of... That's a trailway. It would not be allowed on that, yes. That's a park right under the definition. That's correct. Riverwalk goes all along the river. Yes, it does. How close can you get to the riverwalk if you want to be near the river under the statute? Under the statute, you've got to be 500 feet away from a public park. That's correct. So they can't get close to the river then, can they? It depends. It depends on where you're located. In the city of Ottawa, probably not for the riverwalk areas. There may be areas farther up the Fox River, farther down the Illinois River where one could get to them and use those areas if they wish to. But yes, it is restrictive. I'm not going to deny that there are certain restrictions to this statute. Now, the point is, this is where children congregate in these particular areas, and that's the legislature's point. Is it congregate or whether a child is present? Because I'm just thinking Springfield will start saying the CTA, METRA... Well, it doesn't mention present. As you know, the statute doesn't require presence of children in an area. Again, it's limiting to the public parks that are defined under the statute and not to other areas. And yes, as you mentioned, it does have the 500-foot limit also that's included in that. But then we have miles and miles and miles of Illinois that are totally separated from trailways, bikeways, conservation areas and such, where people can go to private lakes, they can go to large public lakes even, that don't have a park area in them and that are not considered parks under this particular statute. So there are many, many, many areas where individuals can enjoy their life with their families. As long as they have permission to go there. If it's a private area, that would be true, Your Honor, absolutely. And that's all they have available since you've excluded them from all the public areas. Anything that's not under the defined statute, that's correct. And they better carry a ruling. Well, yes, there is a 500-foot limit too, Your Honor. So that would be correct. Does it have a tax rebate for being excluded from all this public property? I doubt it. It's not in the statute. And it also asserts that it violates ex post facto, but we have the 5th District case in Leroy that used the five factors that counsel discussed, saying that an earlier statute, a different statute that prevented sex offenders from residing within 500 feet of specified locations where children would often be present, the court found that that was not an unconstitutional ex post facto law. And this court in Morgan adopted the reasoning of the Leroy court and found that a law that prevented sex offenders from residing within 500 feet of a school is not unconstitutional as an ex post facto law. In those areas, schools are everywhere, just like parks are. And so that's very restrictive. In places where children would be present, that was 11-9.4b5, 500 feet. Same kind of restriction that we have in this law. And both the 5th District and this court said those were not ex post facto laws. As this court said in Morgan, the issue is not whether the legislature made the best choice, but whether the regulatory means chosen were reasonable in light of a non-punitive objection. So if we find that something is punitive, then it escapes your ruling there? If you find something punitive, that's the court's prerogative. If you review the factors and find that it's punitive, then of course you would be within your rights to find it ex post facto. But in our analysis, we believe that the five factors do not make this law punitive when you review the five factors in this case. Is this limited to child sex offenders? Yes. Generally speaking, there are mainly child sex offenders and child sex predators, as I recall. But other sex offenders? There are other sex offenders that would be allowed to be into these areas, yes. And we'd ask that you find this section to be constitutional. Do you have any other questions for us? Thank you. Ms. Stroh, any rebuttal? As your Honor has pointed out, it's not just that child sex offenders are banned from public parks, although that is the focus of this appeal. They're banned from being within 500 feet of a school. They're banned from living within 500 feet of a school.   They're banned from being a child sex offender. So yes, the cumulative effect of each passing statute, the nature of the restrictions child sex offenders are facing, is such a bad advantage. As far as the Avia Brioni's opinion goes, that case, which we were aware of when breaking the law, this case, that case deals with an entire statutory scheme. SORA, the notification law, SORA itself contains multiple provisions, restrictions, requirements that a child sex offender must comply with. The notification law, and then a couple of these criminal statutes. That court made a fleeting reference to the park statute, but they said when they discussed the park statute, in about two sentences of their lengthy opinion, they said that the legislator could have rationally sought to protect children from child sex offenders since children are present in parks. Here we don't have a requirement that children or any human being is present in a park. That means you can see straight across Washington Square Park, and if you can see that no one is there, a child sex offender still cannot take a shortcut through the park. The statute is not reasonable to its alleged purpose. There's not a rational connection. Children are attracted to parks. Some parks, I'm in parks all the time because I have a dog, which a child sex offender probably couldn't have because they're restricted from taking their dog into any kind of public park, which creates a very limited life for the dog. But I'm in parks all the time. I live here in Ottawa because this is where my profession is, and I have a dog. I frequently don't encounter a single person in any park, much less children. I've seen children in Peck Park and on the canal trails in Starved Rock, and if children are in Starved Rock hiking around dangerous cliffs, I would anticipate that they'd have supervision of a parent, which would hopefully eliminate a child sex offender's ability to commit a sex offense against that child. Again, we don't even have an indication that sex offenses happen in parks. This is one woman's conjecture that they possibly could, and I can't prove that they won't, but we don't have any indication that they do. It's merely speculative, and I'd argue just another punishment by design to just target this reviled group of people, again, the vast majority of whom are not going to re-offend. Would we be here if that legislation had when children are present? The statute that has been determined to be constitutional had the provision that what the child sex offender was prohibited from doing, which was conduct and not presence, was approaching, communicating, or contacting a child. The court found that that was a reasonable means of perhaps limiting a sexual assault on a child. Okay, restriction based on conduct. But what if we had the same statute we're dealing with here, but when children are present? That's not based on conduct, that's based on status of the park. The statute would appear to be a little more reasonably connected to the desired purpose. Yes, I can't say whether that would be constitutional or not. We'd have something closer to what has prior and other restrictions been found to be constitutional. Correct. Now, I understand that the standard under a rational basis test is one that's there needs to be some teeth left to the test and highly deferential is not total acquiescence. I think that this court walks a fine line if you were to find the statute constitutional in terms of what it's kind of indicating to the legislator they can do with future statutes. Because people are present everywhere including children. And let me just make sure I don't have anything else to add. As far as the ex post facto analysis goes, we moved to cite additional authority just recently the Doe's v. Snyder case, the Sixth Circuit Michigan case and that case found all five factors weighing in favor of finding the Michigan SORA, Sex Offender Registration Act punitive in effect. And as far as the Leroy case that counsel mentioned where child sex offenders were prohibited from living within 500 feet of a playground school and areas where children, like daycares that statute had a grandfather clause so homeowners that were child sex offenders prior to the passage of that statute were allowed to remain in their homes. And unless your honors have any questions I thank you. Thank you. We thank both of you for your arguments this afternoon and for staying so late. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in recess until November 9th. We're subject to call. Please rise. Mr. Follett Court is now adjourned.